UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHERYL GRISWOLD,

              Plaintiff,                    CIVIL ACTION NO. 17-cv-13460

       v.                                   DISTRICT JUDGE GERSHWIN A. DRAIN

COMMISSIONER OF                             MAGISTRATE JUDGE MONA K. MAJZOUB
SOCIAL SECURITY,

              Defendant.
_____/

## REPORT AND RECOMMENDATION

       Plaintiff Cheryl Griswold seeks judicial review of Defendant Commissioner of Social

Security's determination that she is not entitled to social security benefits for her physical and

mental impairments under 42 U.S.C. § 405(g).  (Docket no. 1.)  Before the Court are Plaintiff's

Motion for Summary Judgment (docket no. 21) and Defendant's Motion for Summary Judgment

(docket no. 22).  Plaintiff has also filed a Reply to Defendant's Motion for Summary Judgment.

(Docket no. 23.)   The motions have been referred to the undersigned for a Report and

Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).  (Docket nos. 3, 24.)  The undersigned

has reviewed the pleadings, dispenses with a hearing pursuant to Eastern District of Michigan

Local Rule 7.1(f)(2), and issues this Report and Recommendation.

## I.     RECOMMENDATION

       For the reasons that follow, it is recommended that Plaintiff's Motion for Summary

Judgment (docket no. 21) be **DENIED** and Defendant's Motion for Summary Judgment (docket

no. 22) be **GRANTED**.

## II.     PROCEDURAL HISTORY

Plaintiff protectively filed an application for a period of disability and disability insurance benefits on February 4, 2011, alleging that she has been disabled since July 30, 2004, due to bilateral chondromalacia patella, status post two left ankle surgeries, bilateral carpal tunnel syndrome, neck pain, heel pain, dizziness, depression, and attention deficit disorder (ADD).  (TR 155-61, 172, 175.)  The Social Security Administration denied Plaintiff's claims on May 16, 2011, and Plaintiff requested a *de novo* hearing before an Administrative Law Judge (ALJ).  (TR 108-18, 132-33.)  In a pre-hearing brief, Plaintiff amended her alleged onset date to December 1, 2009.  (TR 193; *see* TR 83-88.)  On January 30, 2012, Plaintiff appeared with a representative and testified at a hearing before ALJ Patricia S. McKay; vocational expert (VE) Kimberly Warner also testified.  (TR 33-107.)  The ALJ subsequently issued an unfavorable decision on February 13, 2012, which the Appeals Council declined to review on April 19, 2013.  (TR 1-6, 20-29.)

Plaintiff then commenced an action for judicial review in this court on June 11, 2013, *Griswold v. Comm'r of Soc. Sec.*, No. 13-cv-12546 (E.D. Mich. 2013).  On August 14, 2014, the undersigned issued a report and recommendation that the matter be "remanded for evaluation by a medical expert and a proper determination at Step 3 and, if Plaintiff is not found disabled at Step 3, for proper consideration of Dr. Lerner's opinion, proper discussion of Plaintiff's credibility, and any additional, necessary analysis."   (TR 492-512.)    The district judge adopted this recommendation on September 16, 2014, and remanded the matter to the agency.  (TR 490-91.)  On November 22, 2014, the Appeals Council issued an order vacating the ALJ's February 13, 2012 decision and remanding the matter to an ALJ for further proceedings consistent with the order of the court.  (TR 485-89.)

On remand, Plaintiff amended her alleged onset date again, this time to March 7, 2005. (TR 761.) Plaintiff then appeared with a representative and testified at another hearing before ALJ McKay on April 13, 2015; VE Scott Silver also testified at the hearing. (TR 428-58.) The hearing was continued on July 1, 2015, at which Plaintiff again appeared with a representative, and medical expert Ronald E. Kendrick, M.D. testified by telephone. (TR 459-84.) The ALJ issued the instant unfavorable decision on September 16, 2015, and the Appeals Council declined to review the ALJ's decision on August 23, 2017. (TR 341-48, 352-64.) Plaintiff subsequently commenced this action for judicial review, and the parties filed cross motions for summary judgment, which are currently before the Court.

## III.    HEARING TESTIMONY AND MEDICAL EVIDENCE

Plaintiff (docket no. 21 at 4-21), Defendant (docket no. 22 at 8-19), and the ALJ (TR 355-64) have set forth detailed, factual summaries of Plaintiff's medical record and the hearing testimony. Having conducted an independent review of Plaintiff's medical record and the hearing transcripts, the undersigned finds that there are no material inconsistencies among these recitations of the record. Therefore, in lieu of re-summarizing this information, the undersigned will incorporate the above-cited factual recitations by reference and will also make references and citations to the record as necessary to address the parties' arguments throughout this Report and Recommendation.

## IV.    ADMINISTRATIVE LAW JUDGE'S DETERMINATION

The ALJ found that Plaintiff did not engage in substantial gainful activity during the period from the first amended alleged onset date of December 1, 2009, through the date last insured of December 31, 2009, and that Plaintiff suffered from the following severe impairments: status post left ankle fracture, ORIF (open reduction and internal fixation surgery), hardware removal, and

3

degenerative joint disease.  (TR 355; *see* docket no. 22 at 7.)  The ALJ also found that Plaintiff's glaucoma, status post splenectomy, osteopenia, skin cysts, bilateral plantar fasciitis, tendonitis, and history of affective disorder and ADD were non-severe impairments.  (TR 355-56.)  Next, the ALJ determined that Plaintiff's impairments did not meet or medically equal the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (TR 356-57.)  The ALJ then found that, through the date last insured, Plaintiff had the following residual functional capacity (RFC):

> [C]laimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) with the following additional limitations:  occasional climbing of stairs, crouching, crawling, kneeling, stooping, or bending while avoiding work near hazards such as dangerous, moving machinery, unprotected heights, and climbing of ladders; occasional use of foot controls with her left lower extremity; no more than frequent use of her dominant right hand for grasping, turning, or gross manipulation; and occasional use of bilateral upper extremities for fine manipulation tasks (such as writing or keyboarding).

(TR 357-62.)  Subsequently, in reliance on VE Warner's testimony, the ALJ determined that Plaintiff was capable of performing a significant number of jobs in the national economy.  (TR 362-64.)  Therefore, the ALJ found that Plaintiff was not disabled under the Social Security Act at any time from December 1, 2009, through the date last insured of December 31, 2009.  (TR 353, 364.)

## V.      LAW AND ANALYSIS

### A.      Standard of Review

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions.  Judicial review of the Commissioner's decisions is limited to determining whether his findings are supported by substantial evidence and whether he employed the proper legal standards.  *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997).  Substantial evidence is more than a scintilla but less than a

preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Walters*, 127 F.3d at 528. It is not the function of this Court to try cases *de novo*, resolve conflicts in the evidence, or decide questions of credibility. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *See Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts"). "But '[a]n ALJ's failure to follow agency rules and regulations denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record.'" *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 374 (6th Cir. 2013) (quoting *Cole v. Astrue,* 661 F.3d 931, 937 (6th Cir. 2011)).

**B.    Framework for Social Security Determinations**

Plaintiff's Social Security disability determination was made in accordance with a five-step sequential analysis. In the first four steps, Plaintiff was required to show that:

(1)    Plaintiff was not presently engaged in substantial gainful employment; and

(2)    Plaintiff suffered from a severe impairment; and

(3) the impairment met or was medically equal to a "listed impairment;" or

(4) Plaintiff did not have the residual functional capacity (RFC) to perform relevant past work.

*See* 20 C.F.R. § 404.1520(a)-(f).  If Plaintiff's impairments prevented Plaintiff from doing past work, the Commissioner, at step five, would consider Plaintiff's RFC, age, education, and past work experience to determine if Plaintiff could perform other work.  If not, Plaintiff would be deemed disabled.  *See id.* at § 404.1520(g).  The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her*, 203 F.3d at 391.  To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health and Human Servs.,* 820 F.2d 777, 779 (6th Cir. 1987).  This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question, "but only 'if the question accurately portrays [the claimant's] individual physical and mental impairments.'"  *Id.* (citations omitted).

## C. Analysis

The Social Security Act authorizes "two types of remand: (1) a post judgment remand in conjunction with a decision affirming, modifying, or reversing a decision of the [Commissioner] (a sentence-four remand); and (2) a pre-judgment remand for consideration of new and material evidence that for good cause was not previously presented to the [Commissioner] (a sentence-six remand)." *Faucher v. Sec'y of Health and Human Servs.*, 17 F.3d 171, 174 (6th Cir. 1994) (citing 42 U.S.C. § 405(g)).  Under a sentence-four remand, the Court has the authority to "enter upon the pleadings and transcript of the record, a judgment affirming, denying, or reversing the decision of the [Commissioner], with or without remanding the cause for a hearing.  42 U.S.C. § 405(g).  Where there is insufficient support for the ALJ's findings, "the appropriate remedy is reversal and

a sentence-four remand for further consideration." *Morgan v. Astrue*, 10-207, 2011 WL 2292305, at *8 (E.D. Ky. June 8, 2011) (citing *Faucher*, 17 F.3d at 174).

Plaintiff asserts that this matter should be reversed and remanded under sentence four for an award of benefits or for further proceedings because: (1) "[t]he Commissioner failed to sustain her burden of establishing that there is other work in the national economy that [Plaintiff] could perform;" (2) "[t]he ALJ's reasons for discrediting the opinion of Dr. Lerner, [Plaintiff's] treating physician, are again not supported by substantial evidence;" and (3) "[t]he ALJ failed to follow this Court's remand order in, again, reversibly erring by improperly evaluating [Plaintiff's] subjective complaints and credibility." (Docket no. 21 at 2, 21-36.)

### 1. The ALJ's Step-Five Determination

Plaintiff argues that the Commissioner failed to meet her burden at step five of the sequential evaluation process of establishing that there is other work in the national economy that Plaintiff could perform. (Docket no. 21 at 21-27.) Specifically, Plaintiff argues that despite according "significant weight" to the opinion of Dr. Kendrick that Plaintiff was limited to standing and walking for four hours in an eight-hour workday, the ALJ erred in crediting the testimony of VE Warner over the testimony of VE Silver, where VE Silver was the only VE to address the impact of the limitation assessed by Dr. Kendrick. (*Id*. at 22.) Plaintiff argues that since VE Warner's testimony was made in response to a hypothetical question that did not include all of the limitations credited by the ALJ, it cannot provide support for the ALJ's step-five determination. (*Id*.)

As Plaintiff asserts, the ALJ assigned "significant weight" to Dr. Kendrick's opinion that Plaintiff could perform light work. (TR 361.) Contrary to Plaintiff's assertion, however, the ALJ did not incorporate Dr. Kendrick's limitation of standing and walking for only four hours into

Plaintiff's RFC, "given [Plaintiff's] admitted daily activities and the lack of abnormalities on examinations."   (TR 362.)   Plaintiff does not directly challenge the ALJ's rejection of this limitation assessed by Dr. Kendrick, or the ALJ's reasons for doing so.[1]   And the undersigned finds no error in this regard, as "an ALJ is not required to adopt every opinion expressed by a non-examining medical expert, even when an ALJ overall accords that opinion great weight." *Schulte v. Colvin*, No. 4:13-cv-01521, 2014 WL 1654129, at *5 (N.D. Ohio Apr. 24, 2014).   *See also Lambert-Newsome v. Astrue*, No. 11-1141-CJP, 2012 WL 2922717 at *6 (S.D. Ill. July 17, 2012) ("the fact that [the ALJ] gave 'great weight' to [the examiner's] opinion does not mean that he was required to adopt it wholesale [as] [t]he issue of RFC is reserved to the Commissioner"); *Irvin v. Astrue,* No. EDCV 11-23 AJW, 2012 WL 870845, at *2–3 (C.D. Cal. Mar. 14, 2012) (finding that although the ALJ gave great weight to a consultative examiner's opinion, he did not err in implicitly rejecting one limitation from that opinion); *Smith v. Comm'r of Soc. Sec.*, No. 5:11 CV 2104, 2013 WL 1150133, at *11 (N.D. Ohio Mar. 19, 2013) ("Simply put, there is no legal requirement for an ALJ to explain each limitation or restriction he adopts or, conversely, does not adopt from a non-examining physician's opinion, even when it is given significant weight.").

Here, the ALJ weighed the medical and non-medical evidence in conjunction with Plaintiff's subjective complaints and developed an RFC based on the evidence that she found to be consistent with and supported by the record.   The hypothetical questions that the ALJ posed to

---

[1] In a footnote in her reply brief, Plaintiff states, "Further, as discussed in Plaintiff's initial brief, the ALJ committed an independent error by not properly rejecting the limitations identified by Dr. Kendrick."   (Docket no. 23 at 4 n.2 (citing docket no. 21 at 22-25).)   The portion of Plaintiff's initial brief to which she cites contains her instant argument regarding the ALJ's reliance on VE Warner's testimony.   As previously stated, the crux of Plaintiff's argument in this regard is that the ALJ credited Dr. Kendrick's opinion, but relied on the testimony of a VE who was not asked about all of the limitations "credited by the ALJ."   (*See* docket no. 21 at 22.)   At no point in her initial brief does Plaintiff argue that the ALJ erred by deciding not to incorporate Dr. Kendrick's standing/walking limitation into Plaintiff's RFC.   To the extent Plaintiff attempts to make this argument for the first time in the footnote in her reply brief, such a challenge is procedurally improper, and it will not be considered.   *See Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 553 (6th Cir. 2008); *U.S. v. Perkins*, 994 F.2d 1184, 1191 (6th Cir. 1993).

VE Warner at the initial hearing in January 2012 include all of the limitations in the RFC developed by the ALJ on remand in September 2015, and VE Warner testified that there were jobs available for a person with those limitations, which she cited in detail.  (TR 90-93.)  Accordingly, the ALJ properly relied on VE Warner's testimony to determine that there were significant numbers of jobs available that Plaintiff could perform.  Plaintiff's argument fails in this regard.[2]

> 2.      *The ALJ's Assessment of Dr. Lerner's Opinion*

Plaintiff argues that the ALJ failed to give good reasons for discrediting the opinion of her treating physician, Laran J. Lerner, D.O.  (Docket no. 21 at 27-33.)  It is well settled that the opinions of treating physicians are generally accorded substantial deference.  In fact, the ALJ must give a treating physician's opinion complete deference if it is supported by clinical and laboratory diagnostic evidence and it is not inconsistent with the other substantial evidence in the record.  20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).   When an ALJ determines that a treating source's medical opinion is not controlling, he must determine how much weight to assign that opinion in light of several factors:  (1) length of the treatment relationship and the frequency of examination; (2) nature and extent of the treatment relationship; (3) supportability of the opinion; (4) consistency of the opinion with the record as a whole; (5) specialization of the treating source; and (6) other factors.  20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6).

There is no *per se* rule that requires an articulation of each of the six regulatory factors listed in 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6).  *Norris v. Comm'r of Soc. Sec.*, No. 11-CV-11974, 2012 WL 3584664, at *5 (E.D. Mich. Aug. 20, 2012) (citing *Tilley v. Comm'r of Soc. Sec.*, 394 F. App'x 216, 222 (6th Cir. 2010)).  An ALJ's failure to discuss the requisite factors may constitute harmless error (1) if "a treating source's opinion is so patently deficient that the

---

[2] Because the ALJ properly relied upon VE Warner's testimony, the court need not reach Plaintiff's claims of error regarding the ALJ's rejection of VE Silver's testimony.  (*See* docket no. 21 at 24-27.)

Commissioner could not possibly credit it;" (2) "if the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion;" or (3) "where the Commissioner has met the goal of [§ 1527(c)]—the provision of the procedural safeguard of reasons—even though she has not complied with the terms of the regulation." *Nelson v. Comm'r of Soc. Sec.*, 195 F. App'x 462, 470 (6th Cir. 2006) (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 547 (6th Cir. 2004)).

The Commissioner requires its ALJs to "always give good reasons in [their] notice of determination or decision for the weight [they] give [a] treating source's opinion." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). Those good reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Wilson*, 378 F.3d at 544 (quoting Social Security Ruling (SSR) 96-2p, 1996 WL 374188, at *5 (1996)). The district court should not hesitate to remand when the Commissioner has failed to identify the weight assigned to a treating physician's opinion and provide good reasons for that weight. *See Cole v. Astrue*, 661 F.3d 931, 939 (6th Cir. 2011) ("This Court has made clear that '[w]e do not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physician's opinion and we will continue remanding when we encounter opinions from ALJ's that do not comprehensively set forth the reasons for the weight assigned to a treating physician's opinion.") (citing *Hensley v. Astrue*, 573 F.3d 263, 267 (6th Cir. 2009)).

The ALJ assessed Dr. Lerner's opinion as follows:

> In terms of opinion evidence, the claimant and her representative rely on an assessment by Laran Lerner, D.O., as proof that the claimant is disabled (Exhibit 6E, page 2). However, the undersigned does not find this opinion compelling. Dr. Lerner issued his opinion on December 22, 2011 (Exhibit 12F). Although he backdates his assessment to a period "3-4 years" ago (Exhibit 12F, page 5), the evidence indicates that Dr. Lerner did not begin treating the claimant until August

2011, well after expiration of her insured status.  Moreover, while the doctor did have a treating relationship with the claimant, the treatment history at the time the opinion was offered was quite brief.  In fact, the doctor had only been treating the claimant for about five months when the opinion of disability was offered.  In fact, Dr. Lerner had only examined the claimant on two occasions when the report containing the opinion of disability was completed.  There is no corresponding treatment with the date the opinion was offered and Dr. Lerner only examined the claimant one more time after the opinion was offered.  Although a treating sources' statement regarding disability is an issue reserved to the Commissioner, such a statement may be used to show the severity of the claimant's symptoms and their effect on the ability to work (20 CFR 404.1527(e)(2) and SSR 96-5p). . . . Dr. Lerner is not an orthopedist, whereas the medical expert used in this case, as detailed below, is such an expert.  Moreover, Dr. Lerner examined the claimant almost two years after the expiration of the insured status in August 2011.  The physician then examined the claimant one more time in October 2011 before offering an opinion about her condition beginning three to four years prior (Exhibits 11F and 13F).  The doctor examined the claimant one more time in January 2012 reporting that the claimant remained completely and totally disabled (Exhibit 14F).  Further, Dr. Lerner has reported that the claimant could not even perform sedentary work and backdates his opinion to 2007, as detailed above, but the claimant testified in 2012 that she was caring for her ailing mother during this time.  It bears repeating that she indicated that this included helping her mom in and out of the car for appointments, driving, baking/cooking, taking out the garbage, researching her mom's condition on the computer, grocery shopping, as well as housekeeping and doing laundry until the time of her mother's unfortunate death in August 2009.  Even though Dr. Lerner purportedly reviewed the treatment records of Drs. Arbit and Kamil (Exhibit 6E, page 2), there are very few treatment notes from either doctor in 2009 and the records that do exist contain evidence that the claimant is not as limited as she has alleged.  For example, records from Dr. Kamil reflect that the claimant canceled an arthroscopy in 2009 due to "social reasons" (Exhibits 5F, page 1 and 10F).  Moreover, Dr. Arbit indicated that the claimant was "not doing well," but his records reflect that she was dealing with her mom and there was also a gap in treatment of four months in 2009 despite her allegations of debilitating pain (Exhibit 6F, page 1).  Thus, the undersigned finds that Dr. Lerner's 2011 assessment is not probative in determining whether the claimant was disabled prior to December 31, 2009, for all of the reasons outlined above.

(TR 360-61.)

Here, it is evident that the ALJ considered and discussed the regulatory factors in assessing

Dr. Lerner's opinion.  For example, the ALJ discussed the nature, extent, and length of Plaintiff's

relationship with Dr. Lerner by noting that Dr. Lerner had a treatment relationship with Plaintiff

but that he did not begin treating Plaintiff until August 2011, well after the expiration of her insured

status, and he had only been treating Plaintiff for about five months when he issued his opinion of disability. The ALJ also considered the frequency of Dr. Lerner's examination of Plaintiff when she discussed the fact that Dr. Lerner examined Plaintiff for the first time almost two years after the expiration of the date last insured in August 2011, examined Plaintiff one more time in October 2011 before offering an opinion about her condition beginning three to four years prior, and only examined Plaintiff one more time after the opinion was offered. Additionally, the ALJ found that Dr. Lerner's opinion was not supported by or consistent with the record evidence, particularly Plaintiff's activities and the treatment notes from Plaintiff's other doctors. And the ALJ discussed Dr. Lerner's specialization (or lack thereof) by noting that Dr. Lerner was not an orthopedist like Dr. Kendrick, to whose opinion the ALJ accorded significant weight.

Plaintiff argues that "neither a treating nor examining physician's opinion should be dismissed merely because it is retrospective." (Docket no. 21 at 30 (quoting *Engel v. Comm'r of Soc. Sec.*, No. 08-12854, 2010 WL 4539468, at *4 (E.D. Mich. Sept. 29, 2010)).) Plaintiff's argument is without merit. A plain reading of the ALJ's decision and the immediately preceding discussion both demonstrate that the ALJ did not discount Dr. Lerner's opinion solely on the basis that it is retrospective. Moreover, a retrospective opinion is not entitled to deference or significant weight if it is not supported by relevant and objective evidence contemporaneous with the alleged period of disability. *See Strong v. Soc. Sec. Admin.*, 88 F. App'x 841, 845 (6th Cir. 2004); *Butcher v. Sec'y of Health & Human Servs.*, 38 F.3d 1215 (Table), 1994 WL 589504, at *3 (6th Cir. 1994); *Lancaster v. Astrue,* No. 1:07-cv-0044, 2009 WL 1851407, at *12 (M.D. Tenn. June 29, 2009) ("[A] retrospective diagnosis relating back to the insured period may be considered proof of disability only if it is corroborated by evidence contemporaneous with the eligible period."). *See also Clendening v. Astrue,* No. 5:09CV2111, 2011 WL 1130448, at *5 (N.D. Ohio Mar. 28, 2011)

(Retrospective opinions not entitled to deference where treating physicians had no first-hand knowledge of the claimant's condition prior to the last date insured.). As discussed above, the ALJ found Dr. Lerner's opinion to be unsupported by and inconsistent with the record evidence related to the relevant period.

Plaintiff argues that the medical evidence generated during the relevant period does corroborate Dr. Lerner's opinion. (Docket no. 21 at 30-32.) Plaintiff cites evidence to show that some of the diagnoses listed by Dr. Lerner were also present during the relevant period. She also cites evidence from Drs. Arbit and Kamil indicating that she had decreased lower extremity strength, a decreased tolerance for standing, decreased balance, and a bilateral antalgic gait. And she cites objective medical evidence revealing mild osteoarthritic changes with chondromalacia of patella and a mild left sural neuropathy. Plaintiff further cites Dr. Kendrick's opinion that Plaintiff suffered from conditions that could cause pain.

Plaintiff has pointed to evidence in the record that could support a determination contrary to the ALJ's determination that Dr. Lerner's opinion is inconsistent with the record evidence. Essentially, Plaintiff invites the court to reweigh the evidence and substitute its own judgment for that of the ALJ, but it is not the court's role to resolve conflicts in the evidence. *See Brainard*, 889 F.2d at 681 (citation omitted). And while Plaintiff is able to marshal evidence that supports her position that Dr. Lerner's opinion is consistent with the record evidence, the ALJ has also cited substantial evidence (or a lack thereof) to show that Dr. Lerner's opinion of complete and total disability is not consistent with the record evidence, *e.g.*, very few treatment notes from Drs. Arbit and Kamil during the relevant period, which do not reflect disabling limitations, Plaintiff's decision to cancel her knee surgery for "social reasons," a four-month gap in treatment despite Plaintiff's allegations of debilitating pain, and Plaintiff's daily activities. At most, Plaintiff has

shown that the ALJ's decision falls within the ALJ's zone of choice. *See Her*, 203 F.3d at 389-90; *Mullen*, 800 F.2d at 545 (noting that the substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts").

Next, Plaintiff argues that the ALJ should not have discounted Dr. Lerner's opinion on the basis of Plaintiff's ability to care for her mother or perform household chores because the ALJ failed to consider the intermittent nature of those activities, as she did in the previous decision. (Docket no. 21 at 32.) To the contrary, the ALJ explicitly acknowledged Plaintiff's testimony that she only took care of her mother and did the things she did because she had to. And the ALJ reasoned that even if Plaintiff did those activities very infrequently, the fact that she could perform them at all undermined the allegations of *completely* debilitating pain. (TR 359 (emphasis in original).)

Additionally, Plaintiff argues that the fact that Dr. Lerner was not a specialist was not a proper basis for discounting Dr. Lerner's opinion. (Docket no. 21 at 32-33.) Plaintiff argues that the regulations provide that more weight is generally accorded to the opinion of a specialist, not that less weight is accorded to the opinion of a non-specialist. (*Id*. (citing 20 C.F.R. § 404.1527(c)(5)).) The regulation actually states that the SSA "generally give[s] more weight to the medical opinion of a specialist about medical issues related to his or her area of specialty than to the medical opinion of a source who is not a specialist." 20 C.F.R. § 404.1527(c)(5). That is exactly what happened here: the ALJ noted that Dr. Lerner was not an orthopedist and gave more weight to the opinion of Dr. Kendrick, who is an orthopedic surgeon. The regulation explicitly requires the ALJ to consider a treating physician's specialization (or lack thereof) in assessing the treating physician's opinion, and the ALJ properly did so here.

Plaintiff further argues that the ALJ erred by considering the fact that there was a gap in Plaintiff's treatment in assessing Dr. Lerner's opinion.  (Docket no. 21 at 33.)  Plaintiff asserts that she had a valid excuse for the gap in treatment because she was caring for her mother who had cancer, and when her mother passed away, it took her a while to care about doing anything for herself.  (*Id.*)  SSR 96-7p states that an ALJ may find a claimant's statements to be "less credible if the level or frequency of treatment is inconsistent with the level of complaints" as long as the ALJ considers the claimant's explanations or other evidence explaining his infrequent or irregular medical visits or failure to seek medical treatment.  SSR 96-7p, 1996 WL 374186, at *7.  Here, the four-month gap in treatment noted by the ALJ occurred between January and May 2009, *see* TR 361 (citing TR 276), and the ALJ explicitly noted that Plaintiff was primarily caring for her mother from the time that Plaintiff stopped working in 2004 up until her mother passed away in August 2009, *see* TR 359, 361.  The ALJ's consideration of this evidence is sufficient to satisfy SSR 96-7p.  There is no error here.

As discussed above, the ALJ complied with the treating physician rule by sufficiently considering and discussing the regulatory factors in assessing Dr. Lerner's opinion and finding it to be "not probative in determining whether [Plaintiff] was disabled prior to December 31, 2009." (*See* TR 361.)  Moreover, the ALJ's reasons for discounting Dr. Lerner's opinion are sufficiently specific to make clear to any subsequent reviewers the weight that the ALJ gave to Dr. Lerner's opinion, and they therefore constitute good reasons under the regulations.  Accordingly, Plaintiff's Motion should be denied with respect to the ALJ's assessment of Dr. Lerner's opinion.

### 3.    *The ALJ's Assessment of Plaintiff's Credibility*

Plaintiff argues that the ALJ "failed to follow this court's remand order in, again, reversibly erring by improperly evaluating [Plaintiff's] subjective complaints and credibility."  (Docket no.

21 at 33-35.)  "[A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters v. Comm'r*, 127 F.3d 525, 531 (6th Cir. 1997).  But credibility assessments are not insulated from judicial review.  Despite the deference that is due, such a determination must nevertheless be supported by substantial evidence.  *Id.*  An ALJ's credibility determination must contain "specific reasons . . . supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96–7p.[3]  "It is not sufficient to make a conclusory statement that 'the individual's allegations have been considered' or that 'the allegations are (or are not) credible.'"  *Id.*  "[T]he adjudicator may find all, only some, or none of an individual's allegations to be credible" and may also find the statements credible to a certain degree.  *Id.*

Further, to the extent that the ALJ found that Plaintiff's statements are not substantiated by the objective medical evidence in the record, the Regulations explicitly provide that "we will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements."   20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2).  The ALJ will consider: (1) the claimant's daily activities, (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms, (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms, (5) treatment, other than medication, for symptom relief, (6)

---

[3] SSR 96-7p has been superseded by SSR 16-3p, effective March 28, 2016.  *See* SSR 16-3p, 2016 WL 1119029, at *1; 2016 WL 1237954.  Nevertheless, because the ALJ's decision in this matter was rendered prior to the effective date of SSR 16-3p, the ALJ was obligated to comply with SSR 96-7p.  *See Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642 (6th Cir. 2006) ("The Act does not generally give the SSA the power to promulgate retroactive regulations.")

any measures used to relieve the symptoms, and (7) functional limitations and restrictions due to

the pain or other symptoms.  20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); SSR 96-7p; *see also*

*Felisky v. Bowen*, 35 F.3d 1027, 1039-40 (6th Cir. 1994) (applying these factors).

In this case, the ALJ considered and discussed Plaintiff's hearing testimony and her other

subjective complaints in conjunction with the record evidence, and the ALJ found that Plaintiff's

statements concerning the intensity, persistence, and limiting effects of her symptoms were "not

entirely credible for the reasons explained in [the] decision."  (TR 358.)  The ALJ then conducted

an extensive discussion of Plaintiff's credibility:

> It is acknowledged that [t]he claimant had a very good work history from 1982 until
> 2004 (Exhibits 11-14D, 2E, and 5E), which would normally weigh in her favor.
> However, the claimant reported that it was not her choice to stop working at that
> time.  She testified that she was replaced while on a vacation.  Although she denied
> it, this evidence suggests that she would have kept working if not replaced.
> Moreover, during the time period since the claimant stopped working in 2004 and
> until just a few months prior to the expiration of her insured states, the claimant
> was primarily caring for her mother, who had suffered a heart attack in March 2008,
> and was later diagnosed with cancer.  Unfortunately, the claimant's mother passed
> away in August of 2009.  To her credit, the claimant was able to and did care for
> her ailing mom including caring for her mother's personal needs, as well as her
> own.  More specifically, she testified to helping her mom in and out of the car for
> appointments, driving, baking/cooking on occasion, taking out the garbage,
> researching her mom's condition on the computer, grocery shopping, as well as
> housekeeping and doing laundry (Testimony at 2012 hearing).  Undoubtedly, this
> was quite demanding both physically and emotionally, and she did so without any
> particular assistance.  This evidence suggests that the mental and physical
> symptoms may not have been as serious as has been alleged in connection with this
> application and appeal.  While the claimant testified in 2012 she only took care of
> her mother and did the things she did because she had to, the undersigned notes that
> the residual functional capacity as determined herein is less demanding than
> providing full-time care to an adult with failing health.
>
> Although the claimant still maintains that she was disabled and unable to work from
> her amended onset date of December 1, 2009 through December 31, 2009, she
> remained able to operate a snow blower in March of 2008 (Exhibit 11F).  This is
> well after her original alleged onset date of disability in 2004.  Furthermore, at the
> hearing, the claimant testified that she had been using a self-propelled lawn mower.
> These types of daily activities are not limited to the extent one would expect, given
> the complaints of disabling symptoms and limitations.  Even if she did these

activities very infrequently, the fact that she could perform them at all undermines her allegations of *completely* debilitating pain.

Moreover, in 2012 the claimant asserted that her condition has remained relatively stable (Exhibit 4E, page 3). In addition, in an office visit with her psychiatrist dated June 29, 2010, the claimant reported that she was doing okay and did not have any complaints (Exhibit 7F, page 1). While this may have only related to her mental health, one would expect a person with allegedly debilitating pain to mention it to her mental health provider when describing her state in general. Further, in 2015, treatment records indicated that "[s]he is quite active" and referenced bike riding (Exhibit 18F, page 2). This is all despite her testimony in 2012 and 2015 that she has been disabled since prior to her expired insured status with constant pain and that she continues to be disabled with very limited daily activities now and then. The undersigned finds that this evidence further undermines the claimant's allegations of disability prior to her date last insured.

The claimant testified in 2012 that one medication interfered with her ability to sleep and that her pain medications made her tired and nauseous. Yet, the medical records, such as office treatment notes, do not corroborate those allegations. In terms of medications for her severe impairments in 2009, treatment notes indicate that she was given Lidoderm patches, Lyrica, and Voltaren gel. It was noted by Dr. Arbit she did not have prescription coverage and samples were given. Neurontin was also discussed (Exhibit 6F). The records fail to document any side-effects with the samples. Dr. Kamil noted no prescriptions (Exhibit 5F, page 1).

It is also noted that in terms of the factors outlined in 20 CFR 404.1529(c) and Social Security Ruling 96-7p, the claimant attended physical therapy late in 2008. Her prognosis was cited as good and fair (Exhibit 6F, pages 13 and 16). She had full range of motion of the hips and knees with normal flexibility noted as well (Exhibit 6F, page 19). Physical therapy was discontinued due to upcoming surgery (Exhibit 6F, page 13).

(TR 359-60 (emphasis in original).)

The court previously determined that the ALJ's prior assessment of Plaintiff's credibility was not supported by substantial evidence because the ALJ failed to consider the intermittent nature of Plaintiff's activities, failed to explain how Plaintiff's statement to her psychiatrist impugned her credibility with regard to her physical symptoms, and failed to discuss the regulatory factors set forth above. (TR 510-11.) The ALJ fully corrected these errors in her instant

assessment of Plaintiff's credibility, as demonstrated by the excerpt of the ALJ's decision reproduced above.

Plaintiff argues that the ALJ failed to consider her deteriorating physical condition relative to her work status in 2009. (Docket no. 21 at 35.) Plaintiff argues in this regard that the ALJ failed to consider a certain portion of her 2012 testimony that she gave in response to the ALJ's question of why she couldn't work. Specifically, Plaintiff testified, "I can't figure out what I could do . . . that I could do for eight hours every day . . . I can't do what I've been trained to do. I can't sit for very long. I can't walk for very long or stand for very long. I haven't figured out what I could do now." (TR 72-73.) The fact that the ALJ did not recite Plaintiff's hearing testimony in its entirety in the decision does not mean that she did not consider it. *See Kornecky v. Comm'r of Soc. Sec.,* 167 F. App'x 496, 507-08 (6th Cir. 2006) (quoting *Loral Def. Sys.-Akron v. N.L.R.B.,* 200 F.3d 436, 453 (6th Cir. 1999)) ("[I]t is well settled that '[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.'"). Furthermore, it is axiomatic that the ALJ considered all of Plaintiff's hearing testimony, as she is the ALJ that presided over the administrative hearing. There is no error here.

Plaintiff further argues that the ALJ's assertion that Plaintiff's condition "remained relatively stable" in 2012 is a mischaracterization of Plaintiff's response to a question on a disability appeal form. (Docket no. 21 at 35.) The question asked, "How do your illnesses, injuries, or conditions affect your ability to care for your personal needs?" Plaintiff responded, "unchanged." (TR 189.) Plaintiff argues that her statement that her condition was "unchanged" does not necessarily mean that her condition was "stable." To the extent that this matter of semantics could be considered erroneous, in light of the several sound reasons given by the ALJ for discounting Plaintiff's subjective complaints, it does not warrant remand.

The above discussion demonstrates that the ALJ applied the factors set forth in 20 C.F.R. § 404.1529(c)(3) and set forth legitimate reasons for discrediting Plaintiff's hearing testimony and subjective complaints in her decision, which reasons are properly supported by the record evidence in accordance with SSR 96-7p. Thus, the ALJ's decision is sufficiently specific to make clear to Plaintiff and to the court how she evaluated Plaintiff's symptoms. The ALJ's assessment of Plaintiff's subjective complaints is supported by substantial evidence and should not be disturbed.

### 4. *Plaintiff's Amended Alleged Onset Date*

Plaintiff argues that the ALJ "erred in failing to note that [Plaintiff] amended her onset date to March 7, 2005, resulting in the ALJ failing to consider the entire relevant period of time. . . . This alone warrants remand." (Docket no. 21 at 33.) Plaintiff does not further develop or cite any authority to support this argument. "[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to ... put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) (citation and internal quotation marks omitted).

Moreover, this argument is directly contradicted by Plaintiff's counsel's statements regarding the first amendment of the alleged onset date, from July 30, 2004 to December 1, 2009. At the 2012 hearing, counsel stated, "for practical purposes, we're asserting a [sic] onset date of 12/09 . . . since it will not make any difference as to her benefits," and "since her application date would only allow her to go back a year, . . . she couldn't get benefits earlier than that anyway." (TR 36-37, 84.) Defendant explains that Plaintiff did not apply for disability insurance benefits until February 2011, which means that she could not receive disability insurance benefits for any

period before February 2010 under the regulations.   (Docket no. 22 at 37 (citing 20 C.F.R. § 404.621(a)).)

Furthermore, as Defendant points out, the ALJ expressly considered all of the medical evidence from March 7, 2005 forward and acknowledged Plaintiff's claims that her symptoms were disabling starting in 2004.  (*See* docket no. 22 at 36-37 (citing TR 352, 358, 359, 360).)  [T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination."  *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).  Plaintiff has failed to demonstrate any harmful error here.

## VI.    CONCLUSION

For the reasons stated herein, the court should **DENY** Plaintiff's Motion for Summary Judgment (docket no. 21) and **GRANT** Defendant's Motion for Summary Judgment (docket no. 22).

### <u>REVIEW OF REPORT AND RECOMMENDATION</u>

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to

Rule 72.1(d)(2) of the *Local Rules of the United States District Court for the Eastern District of Michigan*, a copy of any objection must be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.


Dated:  February 21, 2019          s/ Mona K. Majzoub
                                   MONA K. MAJZOUB
                                   UNITED STATES MAGISTRATE JUDGE



**PROOF OF SERVICE**

I hereby certify that a copy of this Report and Recommendation was served upon counsel of record on this date.

Dated:  February 21, 2019          s/ Leanne Hosking
                                   Case Manager